# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 2980 | DATE | 3/29/2001 |
| CASE TITLE | Palmetto Properties, Inc. et al vs. County of DuPage et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Cross-Motions for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the Court GRANTS the Forest Preserve District's motion for summary judgment [#62]; GRANTS IN PART and DENIES IN PART Birkett's motion and the County's motion [#64] and GRANTS IN PART and DENIES IN PART the plaintiffs' motion for summary judgment [#61].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 29 2001 | 94 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mrl | courtroom deputy's initials | 01 MAR 29 AM 9:48 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| PALMETTO PROPERTIES, INC., an Illinois corporation; and GREGORY SCHIRMER, | |
| Plaintiffs, | No. 99 C 2980 |
| v. | |
| COUNTY OF DuPAGE, et al., | The Hon. David H. Coar |
| Defendants. | |

**DOCKETED**
**MAR 2 9 2001**

## MEMORANDUM OPINION AND ORDER

Palmetto Properties and its owner Gregory Schirmer want to operate a nightclub featuring nude or partially nude female dancers. The defendants are the DuPage County State's Attorney, the County of DuPage ("the County Defendants"), and the Forest Preserve District of DuPage County ("the District").[1] The plaintiffs sued the defendants for declaratory judgment and an injunction. According to the plaintiffs' theory, an Illinois statute and a DuPage County ordinance, both of which prohibit operation of strip clubs within 1000 feet of a forest preserve, violate the First Amendment to the Constitution as applied to the states through the Fourteenth Amendment's Due Process Clause. The parties have cross moved for summary judgment. For the reasons stated below, this Court: (1) GRANTS IN PART and DENIES IN PART the County Defendants' motion; (2) GRANTS IN PART and DENIES IN PART the plaintiffs' motion; and (3) GRANTS the District's motion.[2]

---

[1] This Court has previously dismissed the Illinois Attorney General, who the plaintiffs sued in his official capacity.

[2] The Court GRANTS the motion for summary judgment by the Forest Preserve District of DuPage County because the District has no connection to the enforcement of the DuPage Ordinance or the Illinois Statute and there is no District ordinance or policy at issue here. The plaintiffs argue that the District has not proved that it can't enforce the laws. They say that it, like any other citizen, could sue to enjoin a strip club as a public nuisance affecting its property. Maybe so, but by this logic any private citizen would be acting "under color of law" and could be joined as a party in a suit challenging the DuPage ordinance and the Illinois law.



## Introduction

The plaintiffs own property located in the unincorporated portion of DuPage County. They intend to operate a night club featuring nude or semi-nude women doing strip tease dancing. The plaintiffs' property is approximately 735 feet from Pratt Wayne Woods Forest Preserve. The only area of Pratt that is within a 1000 foot radius of the plaintiffs' property is an area known as Fern Marsh South. DuPage characterizes it as a "nature conservancy area." This area, along with about 90 percent of the entirety of Pratt, is undeveloped and not used by, or accessible to the general public. Fern Marsh does not contain any trail systems and has no developed public access in the direction of the plaintiffs' property. Fern Marsh is typical of most of the forest preserve land, as policy requires that only about 10 percent of Pratt be developed for active use. The rest of Pratt is used almost exclusively for preserving forests and other natural wilderness areas.

Both the state of Illinois and DuPage County have laws that prohibit strip clubs from operating within 1000 feet of a forest preserve. See 55 ILCS 5/5-1097.5; DuPage Zoning Ordinance § 37-3.2. In 1998, when the Illinois legislature added the provision requiring the 1000-foot separation for forest preserves, it did not rely upon studies or reports concerning the impact of strip clubs on these areas. And, although the County relied upon studies when it passed its original zoning ordinance, it amended the ordinance without conducting or considering any further studies. Specifically, the County did not consider any studies of the impact of strip clubs on Forest Preserves generally or areas like Fern Marsh specifically. With the current zoning scheme in place, there are no lots in unincorporated DuPage County on which a strip club could operate.

Although the plaintiffs have stated their intention to operate a strip club on their property, they have not yet done so. Also, the DuPage County State's attorney's office has not threatened to prosecute the plaintiffs under either law if they did open a stip club. Wary of opening a business that

might be closed down under either the Illinois statute or the DuPage County ordinance, the plaintiffs have asked this Court to declare both laws unconstitutional.

## Analysis

As an initial matter, the defendants argue that this case is not yet ripe because there is no way to tell whether the plaintiffs' strip club will engage in expressive conduct that is protected by the First Amendment. The defendants' argument misses the mark. It is now almost beyond doubt that "strip tease" dancing of the kind that the plaintiffs' propose to exhibit is expressive conduct deserving of First Amendment protection. See, e.g., Miller v. South Bend, 904 F.2d 1081, 1085; id. at 1089-1104) (Posner, C.J. concurring); see also City of Erie v. Pap's A.M., 529 U.S. 277, 120 S.Ct. 1382, 1391 (2000) (plurality opinion); id. at 1402 (Souter, J. concurring in part and dissenting in part); id. at 1406 (Stevens and Ginsberg JJ., dissenting). Even if there was a question as to whether the plaintiffs' strip club would exhibit expressive conduct, "[b]ecause their claims are rooted in the First Amendment, they are entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own." Schad v. Borough of Mount Ephraim, 452 U.S. 61, 66 (1981). The plaintiffs' suit, therefore will not be dismissed on this ground.

## Eleventh Amendment Immunity

The defendants next contend that the Eleventh Amendment bars the plaintiffs' suit. The Eleventh Amendment says that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one on the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In broader terms, principles of sovereign immunity and limited federal judicial power prohibit a citizens from suing not just foreign states jut also their own states in federal court. Hans v.

Louisiana, 134 U.S. 1, 10 (1890).³ Broadly speaking then, the doctrine bars most suits for damages and for equitable relief against any state in federal court. E.g., Sherman v. Community Consolidated Sch. Dist. 21, 980 F.2d 437 (7th Cir. 1992). Although the state itself is not named as a party, suits against state agents in their official capacity are deemed actions against the state. See Kentucky v. Graham, 473 U.S. 159 (1985). Also, local officials are considered state agents when they are charged with enforcement of state statutes. See Garcia v. City of Chicago, 24 F.3d 966 (7th Cir. 1994).

There are, however, exceptions to Eleventh Amendment immunity. See, e.g., Ex Parte Young, 209 U.S. 123, 155 (1908). Under Young, suits for declaratory and injunctive relief against state agents "clothed with some duty in regard to the enforcement of the laws of the state" who are prosecuting or have threatened to prosecute individuals under the allegedly unconstitutional statute my be subject to suit for prospective relief. Id. Unquestionably, the plaintiffs have sued these defendants for prospective relief. Also, Birkett is an officer of the state "clothed with some duty in regard to the enforcement of the laws of the state." Id.; see 55 ILCS 5/3-90005(a)(1). But, no prosecution has been threatened or is pending. Although the plaintiffs argue that it is enough that Birkett is charged with enforcement, they have pointed to no case – in the context of the First Amendment or otherwise – where this has been held sufficient under Young.

There have been cases where the Governor or the Attorney General of Illinois have been found to lack sufficient connection to a statute in question for Young to apply. And, in some of

---

³ The Eleventh Amendment inapplicable by its terms because this case involves Illinois citizens suing the State of Illinois. Nevertheless the Court will employ the convenient "Eleventh Amendment" label that the parties and many other courts have employed. See Crosetto v. State Bar of Wisconsin, 12 F.3d 1396, 1400 n.5 (7th Cir. 1993) ("some courts have used 'the Eleventh Amendment' as a shorthand substitute for the Hans doctrine's authority and origin. While convenient, this characterization is imprecise.")

these cases the Court has pointed to the county state's attorney's authority to prosecute individuals under Illinois statutes as evidence that the connection is not sufficient. See, e.g., Sherman, 980 F.2d at 441. But, while authority to prosecute is a necessary condition to invoke the Young exception, it is not sufficient. Since the plaintiffs have not been threatened with prosecution under the law, this aspect of the defendants' motion is GRANTED and the plaintiffs' motion with respect to the Illinois statute is DENIED.

While the Eleventh Amendment immunity disposes of the plaintiffs' claim with respect to the Illinois statute, the Eleventh Amendment does not apply to Birkett's enforcement of the DuPage County ordinance. He is not an officer of the state with respect to local law. The Court, therefore, turns to the challenge to the DuPage ordinance under the First Amendment.

### First Amendment Challenge

To evaluate the ordinance, it is first necessary to determine the appropriate level of scrutiny to be applied. The character of the ordinance determines the proper test. This ordinance is a content-based restriction of speech since is only applies to strip tease clubs and not to other types of entertainment or dance clubs. See, DiMa Corp. v. Town of Hallie, 185 F.3d 823, 828 (7th Cir. 1999). Ordinarily, this Court subjects content-based classifications to strict scrutiny. E.g. United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 120 S.Ct. 1878 (2000). The Supreme Court, however, has devised an adult-entertainment doctrine for evaluating zoning ordinances like the one at issue here. See City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 49 (1986). In these cases, when the zoning laws appear to be concerned with the "secondary effects" associated with adult entertainment facilities, they are treated as if they are content-neutral time-place-or-manner restrictions. Id. at 49 (1986); DiMa, 185 F.3d at 828 (Renton held that "regulation of sexual

explicit material would be treated like content-neutral time, place, and manner regulations, not that [such zoning ordinances were] content-neutral").

Under the Renton test, the ordinance will only survive a First Amendment challenge if: (1) there is a significant government interest; (2) the ordinance is narrowly tailored to serve the interest; (3) and it leaves open ample alternative avenues of expression. See Renton, 475 U.S. at 50. The government bears the burden of justifying the restriction by pointing to evidence in support of these elements at least by the time that the parties move for summary judgment in a suit challenging the law. DiMa, 185 F.3d at 829-30. The government bears the burden of identifying the "secondary effects with some particularity" Id., 185 F.3d at 829.

## Government Interest

The stated purpose of the ordinance is to combat the "blighting or downgrading of the . . . neighborhood" surrounding adult business uses. With its 1000 feet separation requirement at issue here, the neighborhoods that DuPage County has chosen to protect are forest preserves. The Supreme Court has stated that a city's "interest in attempting to preserve the quality of urban life is one that must be accorded high respect." Young v. American Mini Theaters, 427 U.S. at 71. Courts have upheld separation requirements for public parks in a number of cases. See, e.g., Renton, 475 U.S. at 50-51. To a certain degree, forest preserves are similar to public parks. But, they are not public parks. The most notable difference being that forest preserves are not completely open and accessible to the general public. The plaintiffs dispute that the government has any interest in protecting plants (90% of forest preserves) from the adverse effects of strip clubs.

The analogy to public parks only gets the defendants about 10 percent of the way. Although courts defer somewhat to governments's asserted interests, two things counsel against such deference in this case. First, even assuming that those portions of a forest preserve that are open to the public

are analogous to a public park, 90 percent of the forest preserve largely inaccessible to the general public. It is not apparent that the secondary effects recognized by courts on residential and commercial areas have any relevance to any inaccessible forest.

Second the defendants have not supported their analogy by any evidence or studies showing the similarities between even the 10 percent of forest preserves open to public use, let alone the 90 percent that is not. Based on the plaintiffs concession, the Court finds that the defendants' have a significant interest, but only in protecting the forest preserve areas that are open to the public. The defendants have failed to show a significant interest in protecting from the secondary effects of strip clubs, the vast portions of forest preserve land that are sheltered from human use. The Court now turns to the second and third aspects of the <u>Renton</u> test with the government's interest defined.

## Narrow Tailoring

To defend an ordinance on summary judgement from a constitutional challenge, the government "must offer some record support for the . . . Ordinance's amelioration [of the purported secondary effects]." <u>DiMa</u>, 185 F.3d at 829. New studies of adverse affects of strip clubs are not necessary "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." <u>Renton</u>, at 51-2. The second aspect of the time-palce-or-manner test requires that the classification serve the identified problem well (i.e., be "narrowly tailored"). Although the Supreme Court usually requires a close fit when assessing whether a statutory scheme is "narrowly tailored," in the specific context of the adult entertainment doctrine, the test is not so rigorous.

Despite the oft-repeated phrase "narrowly tailored" – the <u>Renton</u> test does not require an extremely tight fit between the classification and the ends. For example, the Supreme Court in <u>Renton</u> concluded that the zoning ordinance there was not fatally underinclusive even though it did

not regulate other adult businesses (e.g., adult movie theaters) or non-adult businesses (e.g., bars) that cause "secondary effects." Renton at 51. The Court concluded that the ordinance was narrowly tailored because it affected "only the category of theaters shown to produce the unwanted secondary effects." Id. The fact that the town of Renton studied adult movie theaters but did not study strip clubs or other entertainment facilities did not alter the narrow tailoring analysis. Id. at 52. Also, this Court is aware of no case in which a plaintiff has been permitted to show that an ordinance is overinclusive because that plaintiff's business does not cause the secondary effects at which the zoning ordinance is directed.

Notwithstanding the more relaxed fit requirement, the defendants have failed to show that the ordinance adequately serves its interests with respect to forest preserves. First, they have failed to produce any evidence or studies of their own, or evidence upon which they relied or could rely from other jurisdictions to support their ordinance. They have not produced evidence either with respect to the parts of forest preserves open to the public or with respect to the vast majority of area within forest preserves that see virtually no human traffic. Although the defendants recognize that at least by the time of summary judgment they must come forward with evidence justifying the restriction on the plaintiffs' protected expression, see DiMa, 185 F.3d at 829, they have offered only the conjecture of their attorneys. Their reply is that many other jurisdictions have enacted similar separation requirements and courts have upheld those requirements. By this logic, however, the ubiquitousness of similar ordinances would also suggest the ubiquitousness of studies supporting these separation requirements. The defendants, however, have not produced a single study or any other evidence. The defendants have failed in this respect to justify the ordinance under Renton.[4]

---

[4] The defendants also argue that their ordinance was enacted merely to be consistent with Illinois law and that they relied on the Illinois statute. While it is permissible to rely on other jurisdictions, simply stating that such reliance happened does not relieve the government of the

-8-

Even if this Court assumed that the separation requirement served an interest in protecting the parts of the preserve that are open to the public, the ordinance is still extraordinarily and thus fatally overbroad. The undisputed evidence shows that about 90 percent of the forest preserve is not open to the general public – like public parks are – and sees virtually no human traffic whatsoever. Even under the less rigorous narrow-tailoring standard customarily applied in these types of cases, the ordinance must fail. The "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." Ward v. Rock Against Racism, 781, 799 (1989) (footnote omitted). Because the ordinance is significantly overbroad, the Court finds that it is unconstitutional.

### Other Avenues of Expression

In addition to and as a result of being overbroad, the ordinance also fails to satisfy the third part of the Renton test because it fails to leave open ample alternative avenues of expression. See Renton, 475 U.S. at 50. Although "the constitution does not mandate that any minimum percentage of land be made available for certain types of speech," North Ave. Novelties, Inc. v. City of Chicago, 88 F.3d 441, 445 (7th Cir. 1996)), a total ban is inappropriate. An ordinance that regulates expressive activity like the DuPage ordinance does, must leave a "reasonable opportunity" for speech within the zoning scheme. See Renton, 475 U.S. at 52. These alternate avenues of expression must be within the jurisdiction that controls the zoning. It is not sufficient to say that neighboring communities permit the type of speech that the challenged ordinance bans. See Schad, 452 U.S. at 77-77 ("one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.") (quoting Schnieder v. State, 308 U.S. 147, 163 (1939))).

---

burden of showing what exactly it was upon which they relied. They haven't done that here.

The parties concede that there is no land within unincorporated DuPage County that permits the adult use that the plaintiffs seek to operate. To avoid the consequences of this fact, the defendants argue that areas of both incorporated and unincorporated DuPage County should be examined. The defendants' zoning authority, however, applies only in the unincorporated areas of the county. 55 ILCS 5/5-12001. And as already noted, the government may not simply point to neighboring communities that permit the speech as a defense to their ordinance that bans that type of speech from its jurisdiction. See Schad, 452 U.S. at 77-77. Consequently, the ordinance also fails the First Amendment challenge in this respect.

### Prior Restraint

The plaintiffs have also argued that the zoning scheme in DuPage County is an unconstitutional prior restraint on speech. In light of the Court's determination that the ordinance is unconstitutional with respect to the separation requirement related to forest preserves, it need not reach the issue of prior restraint.

### Conclusion

For the reasons stated above, this Court: GRANTS the Forest Preserve District's motion for summary judgment; GRANTS Birkett's motion and DENIES the plaintiffs' for summary judgment with respect to the Illinois statute; DENIES the motion of Birkett and the County of DuPage and GRANTS the plaintiffs' motion with respect to the DuPage County ordinance. The Court declares the DuPage Ordinance unconstitutional and enjoins the defendants from enforcing that ordinance.

Enter:

David H. Coar
United States District Judge

Dated: MAR 2 9 2001